**FILED**

**October 1, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **M.L., R.L., and B.L.**

**No. 20-0246** (Wirt County 18-JA-4, 18-JA-5, and 18-JA-6)

## MEMORANDUM DECISION

Petitioner Mother M.J., by counsel Matthew E. DeVore, appeals the Circuit Court of Wirt County's January 30, 2020, order terminating her parental rights to M.L., R.L., and B.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Chaelyn W. Casteel, filed a response in support of the circuit court's order. The guardian ad litem, Joseph Munoz, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in determining that her improvement period had elapsed, terminating her parental rights, and denying her post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2018, the DHHR filed an abuse and neglect petition alleging that petitioner abused and neglected the children by engaging in domestic violence with her boyfriend in the home; abusing controlled substances; failing to provide adequate supervision and food; failing to meet the children's hygienic needs; and the inadequate condition of the home. According to the petition, law enforcement had recently responded to a domestic violence altercation between petitioner and her boyfriend, at which time they both admitted to smoking marijuana. Further, the DHHR alleged that petitioner tested positive for several drugs, including methamphetamine, the month prior to the petition's filing. As such, the children were removed from petitioner's home.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Petitioner later stipulated to abusing and neglecting the children by virtue of her substance abuse, the children's poor hygiene, and the inappropriate conditions in the home. The court accepted this stipulation at a hearing in July of 2018 and granted petitioner a six-month post-adjudicatory improvement period.

In October of 2018, the circuit court held a review hearing and found that petitioner "has been non-compliant with services and is still using drugs." The court therefore suspended petitioner's visitation with the children until she entered a drug rehabilitation program. In January of 2019, the court held another review hearing and found that, after having it reinstated, petitioner's visitation with the children was again ceased because of her discharge from substance abuse treatment after only thirteen days. The court ordered petitioner to immediately report for a drug screen and explained that her visitation would remain suspended until she enrolled in drug rehabilitation and the multidisciplinary team ("MDT") determined that visitation was appropriate.

In April of 2019, the court ordered petitioner to submit to a psychological evaluation regarding parental fitness. That same month, the court held another review hearing, during which the DHHR indicated that petitioner continued to be noncompliant with several aspects of her improvement period. Specifically, the court found that petitioner began a sober living program but was not complying with individualized therapy or the requirement that she "articulat[e] the reasons for CPS involvement." According to the record, petitioner acknowledged these deficiencies and "pledged to comply in the future."

In June of 2019, the court held a review hearing, during which the DHHR again expressed that petitioner was noncompliant with several aspects of her improvement period. Again, petitioner acknowledged her deficiencies and pledged to comply in the future. The court granted petitioner a post-dispositional improvement period "beginning on June 11, 2019[,] under the same terms and conditions of the original Family Case Plan." The court also ordered petitioner to submit to a substance abuse evaluation and regular drug testing through a DHHR approved screener and execute a release to permit the DHHR to access her results.

Petitioner did not appear for a review hearing in October of 2019, although she was represented by counsel. According to the record, petitioner had not been participating in drug screens following her move to Charleston, West Virginia. Petitioner's counsel asserted that this was due to a lack of locations at which to screen. A DHHR employee explained the issues with drug screens as follows: "[Petitioner] was doing drug screens at her therapist's office. A lady that used to run the sober living house, where [petitioner] currently resides, worked there, and [petitioner] felt that the screens weren't happening often or random enough." At petitioner's request, the DHHR provided her with the necessary forms, and petitioner chose to screen at the MedExpress facility closest to her home. The DHHR employee specifically sent a referral to that facility, though petitioner was only able to screen there one time. The court then ordered petitioner to submit to drug screens at the Kanawha County Day Report Center. The parties then discussed other problems with petitioner's compliance, including the fact that she (1) had not completed parenting and adult life skills services; (2) was bringing other individuals to her visits instead of focusing on the children; and (3) was not present in the home at times when providers were scheduled to go to petitioner's home to administer services. At that point, the court remarked as follows: "We need to pin down exactly what she has to do to be in compliance with her

2

improvement period, because it has been going on a long time and we need to know whether she has successfully completed it or not." The court then noted that petitioner had "been on her improvement period for a long time. We're probably over the time limits, right?" In the order following the hearing, the court terminated petitioner's improvement period but ordered that services continue until the dispositional hearing.

Petitioner did not appear for the dispositional hearing in December of 2019, although she was represented by counsel. At the outset, the DHHR indicated that petitioner failed to participate in the services offered during her improvement periods and moved to terminate her parental rights. The guardian joined in the motion. During the hearing, the DHHR introduced evidence that petitioner fell asleep during a visit with the children and the visit was cancelled when the provider could not wake petitioner. Based on the evidence, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because she failed to avail herself of the services provided, did not follow through with substance abuse counseling, did not participate in parenting or adult life skills services, and continued to avoid drug screens and drug rehabilitation counseling. The court also found that the children's welfare required termination of petitioner's rights because of their need for continuity and care in a stable home environment. The court also noted that petitioner's psychological evaluator concluded that her prognosis for improved parenting was poor. As such, the court terminated petitioner's parental rights and denied her post-termination visitation with the children, finding that the same was not in the children's best interests.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first alleges that the circuit court erred in terminating her improvement period. According to petitioner, West Virginia Code § 49-4-610(3) permits circuit

---

[2]According to the DHHR, the children's father is participating in an improvement period. The permanency plan for the children is reunification with the father, while the concurrent permanency plan is adoption in their current foster homes.

courts to grant a post-dispositional improvement period "not to exceed six months." Petitioner argues that because her post-dispositional improvement period had begun only four months prior, the circuit court was wrong in finding that the applicable timeframe had lapsed. Petitioner ignores, however, that West Virginia Code § 49-4-610(9), governing time limits for improvement periods, is clear that "no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months." Because the children were placed into foster care in June of 2018, they had remained there for fifteen months at the time the court made this ruling. As such, we find no error in the circuit court's findings or in its decision to terminate petitioner's improvement period, especially in light of the evidence of her noncompliance, which petitioner does not challenge in arguing in support of this assignment of error.

Next, petitioner alleges that the circuit court erred in terminating her parental rights when, by its own admission, the terms and conditions of her improvement period were ambiguous and unclear. In support of this assignment of error, petitioner relies entirely on the court's statement at the October of 2019 review hearing where the court indicated that the parties needed to "pin down exactly what [petitioner] has to do to be in compliance with her improvement period, because it has been going on a long time and we need to know whether she has successfully completed it or not." Petitioner has taken this statement out of context, however, as the court's comment was made in direct response to an extended discussion of petitioner's failure to comply with multiple aspects of her improvement period, including her failure to (1) complete parenting and adult life skills services, (2) attend visits with the children without bringing other individuals along, and (3) be home when providers were scheduled to visit. On appeal, petitioner asserts, without any citation to the record, that "no one . . . could articulate the exact terms and conditions of [her] . . . improvement period—not even the court." This is simply disingenuous, as the parties at the hearing discussed, at length, many aspects of the improvement period with which petitioner failed to comply. Even more importantly, the parties addressed the fact that petitioner's compliance with drug screens waned because of her decision to cease drug screening with her therapist and her attempts to screen at other locations of her choosing.

Petitioner's attempt on appeal to paint this as a failure on the part of the DHHR not only ignores the record but also the fact that West Virginia Code § 49-4-610(4)(A) is explicit that "[w]hen any improvement period is granted to a [parent] pursuant to this section, the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." Petitioner bore the responsibility for initiating and completing all the terms of her improvement period. Instead of accepting this responsibility, petitioner chose to cease drug screening at a viable location and attempted to screen elsewhere. Even with the DHHR's assistance in delivering the necessary documents, petitioner's choice of screeners ultimately proved unworkable. As such, petitioner's arguments in support of this assignment of error are unavailing, because the record shows that it was petitioner's conduct that caused the issues with her services. Further, the only legal authority upon which petitioner relies in support of this assignment of error is West Virginia Code § 49-4-610(3)(E), which states that "[t]he order granting the improvement period shall require the department to prepare and submit to the court an individualized family case plan in accordance with section four hundred eight of this article." On appeal, petitioner does not allege that the DHHR failed to file the necessary case plan or that she objected to the contents of any plan that was filed. In fact, petitioner fails to cite to any specific aspect of the case plan that she alleges was unclear.

4

Conversely, as more fully discussed below, petitioner failed to satisfy the clear goals set out for her in order to regain custody of the children.

In petitioner's next assignment of error, she asserts that termination of her parental rights was inappropriate and that she should have been entitled to disposition under West Virginia Code § 49-4-604(c)(5), which provides for a child's temporary placement with an appropriate individual. According to petitioner, this would have been appropriate because she "committed no egregious or continued violations of the terms and conditions of her improvement period." Petitioner again argues that her failure "to screen at times and locations that were never precisely stated does not warrant termination," while again ignoring that it was her decision to alter the manner in which she screened. This argument, like petitioner's earlier arguments, turns on her assertion that she was unclear as to how to "complete an inpatient drug rehab program under uncertain and ambiguous terms." However, she again fails to indicate in what manner the requirement that she undergo substance abuse treatment in order to correct her substance abuse, which she stipulated to at adjudication, was unclear. On the contrary, the record shows that petitioner was fully aware that she needed to address her substance abuse through drug screens and substance abuse treatment, yet she willfully left one treatment program after only thirteen days and ceased screening with her therapist only to later claim that her inability to locate a new facility to screen was the DHHR's fault. Just as we found above, these arguments are unavailing and only underscore petitioner's noncompliance with the DHHR's rehabilitative efforts.

Further, according to West Virginia Code §49-4-604(d)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future includes one in which "[t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child." Based on petitioner's refusal to comply with the services designed to remedy her substance abuse, the court made this finding. The court also found that termination of her parental rights was necessary for the children' welfare. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental rights upon such findings. Additionally, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the overwhelming evidence in support of these determinations, which petitioner does not challenge on appeal, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, petitioner argues that the circuit court erred in denying her request for post-termination visitation. Without citing to any evidence in the record in support, petitioner simply asserts that a strong bond existed between her and the children. We find this insufficient to entitle

5

petitioner to relief, as we have long held that post-termination visitation is only appropriate where "[t]he evidence . . . indicate[s] that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 11, in part, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002) (citation omitted). Petitioner has not met this burden and, as such, is entitled to no relief.

Finally, because the proceedings regarding the father are ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 30, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: October 1, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton